IN THE UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

_____

RECORD NO. 25-2281

_____


UNITED STATES OF AMERICA

*APPELLANT*

VS.

MELVIN WILLIAMS

*APPELLEE*

_____

**APPEAL FROM ORDER GRANTING RELIEF UNDER 28 U.S.C. § 2255, AND FROM AMENDED JUDGMENT OF SENTENCE, IN CRIMINAL NO. 2:94-CR-196 IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

**APPELLEE'S INITIAL BRIEF**

_____

*LAWRENCE J. BOZZELLI, ESQUIRE*
*1315 Walnut Street - Suite 1605*
*PHILADELPHIA PA 19107*
*IDENTIFICATION NO. 85108*
**COUNSEL FOR APPELLEE, MELVIN WILLIAMS**

**_TABLE OF CONTENTS_**                                          **_Pages_**

TABLE OF AUTHORITIES          . . . . . . . . . . . . . . . . . . . . . . . . . . .     3

SUMMARY OF ARGUMENT ……………………………………….     4

ARGUMENT ……………………………………………………….     5

    **(I)    THE DISTRICT COURT PROPERLY HELD THAT THE APPELLEE'S CONVICTIONS WERE THE RESULT OF AN INVALID PREDICATE CRIME AND A RESENTENCING WAS WARRANTED**

CONCLUSION ……………………………………………….......     33

COMBINED CERTIFICATIONS ……………………………………….     33

CERTIFICATE OF SERVICE …………………………………………     34

1

# CASELAW                                              PAGES

*Max's Seafood Café v. Quinteros,* 176 F.3d 669 . . . . . . . . . . . . . . . . .  4

*Johnson v. United States,* 576 U.S. 591  . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Borden,* 16 F.4th 351. . . . . . . . . . . . . . . . . . . . . . . . . 5

*Harsco Corp. v. Zlotnicki,* 779 F.2d 906. . . . . . . . . . . . . . . . . . . . . . .  6

*United States v. Davis,* 139 S. Ct. 2319. . . . . . . . . . . . . . . . . . . . . . .   7

*United States v. Taylor,* 142 S. Ct. 2015. . . . . . . . . . . . . . . . . . . . . . .  9

*United States v. Robinson*, 844 F.3d 137 . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Vines,* 134 F.4th 730 . . .. . . . . . . . . . . . . . . . . . . . . . . 9

*Brecht v. Abrahamson,* 507 U.S. 619 . . .. . . . . . . . . . . . . . . . . . . . . . . 10

*Hedgpeth v. Pulido*, 555 U.S. 57 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Stromberg vs. California*, 283 U.S. 359 . . . . . . . . . . . . . . . . . . . . . . . .12

*Black v. United States*, 561 U.S. 465 . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States  v.  Wright*, 665 F.3d 560 . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kotteakos v. United States*, 328 U.S. 750 . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Bentley*, 49 F.4th 275 . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Saybolt*, 577 F.3d 195 . . . . . . . . . . . . . . . . . . . . . . . . .15

*United States v. Wilson*, 960 F.3d 136 . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Stevens*, 70 F.4th 653 . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Theodoropoulos*, 866 F.2d 587 . . . . . . . . . . . . . . . . . . . 21

*Weiler v. United States*, 323 U.S. 606 . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Lewis*, 802 F.3d 449 . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Cannon*, 987 F.3d 924 . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Vasquez*, 672 F. App'x 56 . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Heyward*, 3 F.4th 75 . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## STATUTES AND RULES

28 U.S.C. §2255            . . . . . . . . . . . . . . . . . . . . . .      6

18 U.S.C. § 924            . . . . . . . . . . . . . . . . . . . . . .      6

18 U.S.C. §3742(a)(1)       . . . . . . . . . . . . . . . . . . . . . .      5

## *SUMMARY OF ARGUMENT*

The District Court properly concluded that appellee Melvin Williams should have been afforded a re-sentencing due to the fact that a "general" verdict sheet gave rise to the argument that one of the predicate crimes would have been invalid to support a §924(c) conviction.

In short, the appellee argues that the District Court was correct when it examined the verdict sheet and trial record to evaluate whether there was any "reasonable possibility" that the jury based its §924(c) convictions solely on an invalid predicate. There is more than a "reasonable possibility" that the appellee's verdict was not squarely grounded on valid predicates, and thus the errors were not harmless.

The District Court properly reasoned that there was a "need to correct a clear error of law or fact or to prevent a manifest injustice," as required under Rule 59. *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). While the appellee's convictions for attempted murder and assault under §1114 and §111 remain valid predicate crimes of violence, the general verdict rendered in this case leaves "grave doubt" as to whether his § 924(c) conviction was predicated

on a valid "crime of violence." There is more than a "reasonable possibility" that the *Stromberg* errors "had substantial influence" on the jury's verdict.

## **ARGUMENT**

**(I) THE DISTRICT COURT PROPERLY HELD THAT THE APPELLEE'S CONVICTIONS WERE THE RESULT OF AN INVALID PREDICATE CRIME AND A RESENTENCING WAS WARRANTED**

On September 24, 1997, a jury convicted Appellee Melvin Williams of using and carrying a firearm during and in relation to a "crime of violence" in violation of 18 U.S.C. §924(c). Under Count 8 of a Superseding Indictment, appellee was charged with the crime of §924(c) which could have been predicated on any one of the four other offenses for which he was also convicted: *conspiracy to commit Hobbs Act robbery*, in violation of 18 U.S.C. §1951 (Count 1); *conspiracy to assault and kill Federal agents*, in violation of 18 U.S.C. §371 (Count 2); *attempt to kill Federal agents*, in violation of 18 U.S.C. §1114 (Counts 3 and 4); and *assaulting a Federal agent with a deadly weapon*, in violation of 18

U.S.C. §111 (Counts 5 and 6).

The conspiracy to commit Hobbs Act robbery charged in Count 1 focused on the conduct of the appellee and his co-conspirators around the time period of March 1993 to on or about March 16, 1994. [ECF 335, p 30] The remaining Counts 2 - 6 involved a shootout on March 16, 1994, during which the appellee's co-conspirators fired at Federal law enforcement officers. [ECF 335, p 31–32]. It is undisputed that the first two Counts - *conspiracy to commit Hobbs Act robbery* and *conspiracy to assault and kill Federal agents* - are no longer valid predicate "crimes of violence" for a §924(c) conviction. [ECF 451, p 3]. See also *Johnson v. United States*, 576 U.S. 591 (2015); *United States v. Davis*, 139 S. Ct. 2319 (2019); *United States v. Borden*, 16 F.4th 351 (2nd Cir. 2021).

On August 8, 2022, the appellee submitted a *pro se* motion titled "Motion to Correct Sentence under Rule 60(b)(6) and 59(e)(3)." [ECF 435] The District court determined that since the motion was filed within 28 days of the date of the order denying the appellee's §2255 motion, it should be addressed under Federal Rule of Civil Procedure 59(e). See *Banister v. Davis*, 140 S.Ct. 1698, 1708 (2020), which clarifies the differences between Rule 59(e) and Rule 60(b) motions, and 27A Fed. Proc., L.Ed. § 62:756 (2006), the court explained that "the purpose of a Rule 59(e) motion for

reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence" that may arise in a case. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).

To prevail on a motion for reconsideration, a party seeking reconsideration must demonstrate one of the following: (1) "an intervening change in the controlling law"; (2) the availability of new evidence that was not available when the court ruled on the motion; or (3) "the need to correct a clear error of law or fact or to prevent a manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

Section 2255 empowers a court to "vacate, set aside or correct" a sentence that "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. §2255(a). If a party is entitled to relief under §2255(a), "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* §2255(b).

Section 924(c) of Title 18 of the United States Code states that it is a crime for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm." 18 U.S.C. § 924(c)(1)(A).

The statute defines "crime of violence" as an offense that is a felony and

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id*. §924(c)(3). The first clause has become known as the "elements" clause, and the second clause is called the "residual clause." This clause required courts to look at the ordinary case of committing the underlying offense and determine whether that generic crime, <u>by its nature</u>, involved a substantial risk of physical force. It focused on the <u>inherent risk</u> rather than the formal elements. This required judges to hypothesize and estimate the risk of force in the "ordinary" commission of a crime, which the Supreme Court found to be inherently standardless.

In *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court held that the residual clause of §924(c) was unconstitutionally vague. Therefore, offenses that had previously been considered "crimes of violence" based on the residual clause are no longer "crimes of violence" and cannot serve as predicates for a conviction under §924(c). The District Court reasoned that "for that reason, all parties agree that Counts 1 and 2 - conspiracy to commit Hobbs Act robbery and conspiracy to assault and kill Federal agents - are not valid predicate 'crimes of violence' for a § 924(c)

conviction." [ECF 51, p3].

However, in order to determine whether a conviction meets the definition of "crime of violence" under the elements clause, Federal courts now use the categorical approach, under which "the only relevant question is whether the federal felony at issue always requires the government to prove – beyond a reasonable doubt, as an element of its case – the use, attempted use, or threatened use of force." *United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022); *United States v. Robinson*, 844 F.3d 137, 142 (3d Cir. 2016).

Courts use the "modified categorical approach" when dealing with a statute that has a divisible structure, meaning it includes multiple, alternative versions of a crime. As established in *United States v. Peppers*, 899 F.3d 211, 231 (3d Cir. 2018), this approach allows courts to examine documents such as indictments, jury instructions, verdict forms, or plea agreements to determine which specific crime and its elements the defendant was convicted of, within a divisible statute. See *Mathis v. United States*, 579 U.S. 500, 505–06, 517 (2016). Afterwards, the court assesses whether that particular crime categorically qualifies as a "crime of violence." See also *United States v. Vines*, 134 F.4th 730 (3rd Cir. 2025).

The appellee sought relief from his 18 U.S.C. §924(c) conviction

based upon the above stated legal reasoning. Appellee argues that his conviction for attempted murder in violation of 18 U.S.C. §1114 and assault of Federal agents in violation of 18 U.S.C. §111 are not valid "crimes of violence" for the same reasons his conspiracy convictions in Counts 1 and 2 are not valid "crimes of violence".

Appellee also argues that his §924(c) conviction is no longer valid because it is impossible to determine whether his §924(c) conviction was supported by a valid predicate based upon a review of the record in this case. [ECF 450, 456] .

The District Court concluded that the appellee was correct and invalidated his conviction on this charge. In reaching this conclusion, the District Court held that "there is more than a "reasonable possibility" that the jury convicting Williams based the § 924(c) guilty verdict solely on an invalid predicate." *See Wilson*, 960 F.3d at 151. The trial court's error in instructing the jury that the § 924(c) conviction could rest on now-invalid predicates was not harmless. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Therefore, the District Court reasoned that the appellee's §924(c) conviction cannot stand.

Appellee argued to the District Court that his convictions as per §1114 and §111 were based on an "aiding and abetting" theory of liability, and

under that theory, these crimes are not valid crimes of violence and cannot serve as predicates for § 924(c). The District Court held otherwise. It reasoned that aiding and abetting completed Hobbs Act robbery is a "crime of violence" because "where the underlying substantive offense includes, as an element, the use of physical force, that same physical force is necessarily an element of aiding and abetting liability." [ECF 464, p 10-11] However, the District Court was correct in its analysis when it took the reasoning one step further. It accurately reasoned that the key question remains whether the specific predicate upon which the appellee's § 924(c) conviction was based is a valid "crime of violence" because the offenses upon which the jury could have based his § 924(c) conviction include both valid and invalid predicates. In support of this point, it was noted that the jury at appellee's trial was charged that to convict him on the §924(c) charge, they could find that any one of the other offenses charged in Counts 1-6 could serve as the predicate "crime of violence." [ECF No. 335, p 58]

It is imperative to note that the appellant presented two distinct theories under which the jury could have convicted the appellee of the §924(c) charge. The first theory involved the appellee carrying firearms during and in relation to the Count 1 conspiracy to commit Hobbs Act robbery, a now-

invalid predicate. *See* ECF No. 335 at 6, 60–61, 69–70. The second theory involved Williams aiding and abetting the use of firearms by his co-conspirators during and in relation to Counts 2-6, which includes an invalid predicate (Count 2) and valid predicates (Counts 3-6). *Id.* One of the key points in the appellee's argument is that, although the jury was asked to choose between two theories and unanimously agree on a single predicate, "crime of violence," neither the prosecution nor the trial judge designed the verdict sheet to specify which predicate crime supported the conviction. The appellee was convicted based solely on a general verdict sheet that did not require the jury to state which theory supported their conviction. [ECF 288, Jury Verdict Sheet]

"A conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (*per curiam*). This rule is derived from *Stromberg vs. California*, 283 U.S. 359 (1931), which stands for "the principle that, where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground." *Griffin v. United States*, 502 U.S. 46, 53 (1991). "[A] general verdict may be set aside 'where the verdict is supportable on one ground, but not on another, and it is

impossible to tell which ground the jury selected.'" *Black v. United States*, 561 U.S. 465, 470 (2010) (quoting *Yates vs. United States*, 354 U.S. 298, 312 (1957)). The U.S. Supreme Court has followed this logic when holding that "a general verdict may be set aside "where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Black v. United States*, 130 S. Ct. 2963, 177 L.Ed.2d 695, 561 U.S. 465 (2010). The Third Circuit in *United States v. Wright*, 665 F.3d 560 (2012) invalidated a conviction where "both sides agree that the "jury [was] instructed on multiple theories of guilt, one of which is improper."

At this point, no one would argue that the conspiracies charged in Counts 1 (conspiracy to commit Hobbs Act robbery) and 2 (conspiracy to assault and kill Federal agents) are no longer considered crimes of violence. As a result, the district court that handled the jury trial committed a *Stromberg* error when it instructed the jury that it could convict Williams of violating §924(c) by relying on either Counts 1 or 2. Moreover, the presentation to the jury of the first theory - based solely on Count 1 - was likewise erroneous. When a defendant seeks Federal *habeas* relief under § 2255 based on a *Stromberg* error, courts evaluate whether the constitutional error was harmless under the standards articulated by the

Supreme Court for the analogous state habeas context in *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993). *See Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008) (applying *Brecht* in state habeas case where defendant sought relief for *Stromberg* error). While *Brecht* arose in the context of federal habeas review of state criminal convictions, the Third Circuit has extended *Brecht*'s standard to § 2255 motions. *See United States v. Bentley*, 49 F.4th 275, 289 n.9 (3d Cir. 2022), *cert. denied,* 143 S. Ct. 787 (2023).

*Brecht* held that the harmless error standard articulated in *Kotteakos v. United States*, 328 U.S. 750 (1946) applies when determining whether *habeas* relief must be granted due to constitutional errors. 507 U.S. at 638. "The test under *Kotteakos* is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 637 (quoting *Kotteakos*, 328 U.S. at 776). *Kotteakos* expounded on the harmless error standard as follows:

One cannot confidently say, after examining everything without removing the erroneous action from the whole, that the judgment was not significantly influenced by the error; it is impossible to conclude that substantial rights remained unaffected. The question is not merely whether there was enough evidence to support the result apart from the part

affected by the error, but whether the error itself had a significant impact. If it did, or if there is serious doubt, the conviction cannot stand. 328 U.S. at 764. The Supreme Court has stated that "[w]hen a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." *O'Neal*, 513 U.S. at 436. "Grave doubt" means that the court feels itself "in virtual equipoise as to the harmlessness of the error." *Id.* at 435. See *United States v. Saybolt*, 577 F.3d 195, 206 (3d Cir. 2009) ("An error is harmless when it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (quoting *Neder v. United States*, 527 U.S. 1, 15 (1999)) (internal quotation marks omitted)). There must be more than a "reasonable possibility" that the error was harmful. *Brecht*, 507 U.S. at 637.

In their brief, the appellant contends that the appellee's argument is foreclosed by *United States v. Wilson*, 960 F.3d 136, 151 (3d Cir. 2020), in which the appellee's §924(c) convictions could have been based the now-invalid predicate of conspiracy to commit armed bank robberies and/or two counts of the still-valid predicate of armed bank robbery. Specifically, the appellant argues that the district court's conclusion otherwise was

erroneous. The appellant incorrectly argues that the trial court appeared to apply the wrong test, focusing at times on the *Chapman*[1] harmless error test applied in *Wilson*, which requires the government to show beyond a reasonable doubt that there was no "reasonable possibility" that the error affected the verdict. The appellant further argues that the narrower *Brecht* standard is applicable on *habeas* review, allowing relief only where there is a showing of actual prejudice; the Supreme Court has instructed that a "reasonable possibility" of a different result is insufficient. [ECF 14]  The appellant contends that this is incorrect.

The appellee requests that this Court determine *Wilson* as the relevant case. The Court should then review the verdict form and the trial evidence to assess whether there was a reasonable chance that the jury's §924(c) conviction was based only on an invalid predicate. As directed by the U.S. Supreme Court, if record review causes a diligent judge to strongly doubt the impact of an error on the jury's decision verdict," the error should be treated as if it affected the verdict. *O'Neal*, 513 U.S. at 435. The appellee agrees with the District Court in its analysis of the trial record, and its conclusion that it has "grave doubt about the effect of the *Stromberg* errors in this case, and therefore the errors are not harmless." [ECF 464, p 14]

---

[1] *Chapman v. California*, 386 U.S. 18 (1967)

At the appellee's trial, the jury was instructed that the offenses charged in Counts 1 – 6, *conspiracy to commit Hobbs Act robbery* (Count 1), *conspiracy to assault and kill Federal agents* (Count 2), *attempted killing of an FBI agent* (Counts 3 and 4), *assault on an FBI agent* (Counts 5 and 6) - "are each crimes of violence." ECF No. 335 at 56. Therefore, any one of the Counts 1 - 6 could serve as a predicate for Count 8, which charged the appellee with having "used or carried a firearm during and in relation to a crime of violence." [ECF 335, p 56-57] The jury was instructed that to convict on Count 8, "it is sufficient if you find beyond a reasonable doubt that the defendant knowingly used and carried a firearm during and in relation to anyone of the underlying crimes of violence." *Id.* at 58.

The government presented two theories to justify the jury's conviction for Count 8. The first argued that the appellee violated § 924(c) by carrying two .38 caliber revolvers during and related to Count 1, which involved conspiracy to commit Hobbs Act robbery from around March 1993 to March 16, 1994. [ECF No. 335 at 6, 60–61, 69–70; ECF No. 339 at 105–06]. The second theory claimed that the appellee violated § 924(c) by aiding and abetting his co-conspirators in using different guns during a shootout with law enforcement on March 16, 1994, linked to Counts 2-6. See ECF No. 335 at 6, 60–61, 69–70; ECF No. 339 at 105–06. The first theory focused

solely on carrying firearms, while the second involved firearm use. Thus, the jury was instructed that "the government only has to show that during and in relation to the crime involved the defendant used or carried a firearm, not both" [ECF 335, pp. 56–57]. Additionally, the jury was told that:

> If you find the defendant guilty, you must unanimously agree on the *underlying crime of violence*, and you must unanimously agree on *which gun the defendant used and carried in relation to that crime of violence*. In other words, you may not find the defendant guilty if only some of you agree that the defendant used and carried a particular firearm and the rest of you agree that the defendant possessed a different firearm. You must be in agreement as to the firearm in order to find the defendant guilty. And you must be in agreement as to which crime of violence in order to find him guilty.

ECF No. 335 at 58–59. Accordingly, the jury was instructed that, to find the appellee guilty on Count 8, not only must it select between two independent theories involving carrying or use of a firearm, but it must also identify the specific underlying "crime of violence" and the specific firearm used or carried. On the jury verdict sheet, however, the jury merely placed a check in the guilty column next to Count 8, described on the verdict sheet as "Using and Carrying a Firearm During and in Relation to a Crime of Violence." [ECF 288].

The record does not clarify whether the jury based the appellee's

§924(c) conviction on the first theory—carrying two guns in connection with Count 1—or the second theory—helping and abetting the use of different guns related to any of Counts 2-6. If the jury's verdict on Count 8 relied on the first theory, then the appellee's § 924(c) conviction depended entirely on the invalid predicate of conspiracy to commit Hobbs Act robbery.

The error in instructing the jury to consider the first theory had a "substantial and injurious effect or influence." *Brecht*, 507 U.S. at 638. The evidence presented at trial strongly supported a conviction based on the invalid first theory. The jury was charged that, for both theories under Count 8, "[t]he government is required to prove that the firearm was in the defendant's possession or under defendant's control at the time that a crime of violence was committed. The government must prove that the firearm furthered the commission of the crime or was an integral part of the underlying crime being committed." [ECF No. 335, p 57]. These elements were simple to find under the first theory, given that the Parties stipulated at trial that the appellee was carrying the two relevant guns on March 16, 1994. ECF No. 333 at 125. Moreover, as defense counsel stated, "by the defendant's own admissions in his statements to the police and the FBI [the two guns Williams carried] were part of the plan to commit the armed robbery." [ECF 335, p 9]

By contrast, a jury finding that the firearms at issue under the second §924(c) theory were "in the defendant's possession or under defendant's control," [ECF No. 335, p57], may have been complicated by the fact that those firearms were not found in his possession and were not fired by him. *See* ECF No. 335 at 6. At trial, defense counsel expressed concern that the jury might base a §924(c) conviction on the guns Williams admittedly carried in relation to the first theory, *even if the jury convicted Williams under the second theory*. [ECF No. 335, p 60–61; *see also id*. at 67] ("It's important that they understand. Because it's undisputed that he had two guns in his pocket, but that does not constitute a violation of Count Eight with regard to the conspiracy to kill the agents [Count 2]."). That is, the jury might have confused which firearms related to which crimes of violence, and therefore might mix and match a predicate "crime of violence" and predicate firearm to reach a § 924(c) conviction. As defense counsel summarized, "I think it's so confusing which [guns] were carried for what." *Id.* at 60.

As discussed earlier, *United States v. Stevens*, 70 F.4th 653 (3d Cir. 2023), ruled that a conviction based on aiding and abetting can qualify as a "crime of violence." 70 F.4th at 661–62. However, since the jury was asked to choose one theory for Williams's conviction under § 924(c), it is quite

possible that the jury considered the firearms Williams admitted carrying in relation to Count 1 as more strongly supporting a § 924(c) conviction than the firearms used under an aiding and abetting theory related to one of the charges in Counts 2-6.

The appellee's general verdict does not reveal which gun was the predicate firearm upon which the § 924(c) conviction was based. The Third Circuit grappled with this kind of uncertainty resulting from a general verdict in *United States v. Theodoropoulos*, 866 F.2d 587, 597–98 (3d Cir. 1989), *overruled on other grounds by United States v. Price*, 76 F.3d 526 (3d Cir. 1996). In *Theodoropoulos*, the jury was instructed that it could base a § 924(c) conviction on any of four firearms. 866 F.2d at 597. The Third Circuit held that "[s]ince the jury's general verdict does not reveal which of the guns the jury had concluded he had used during the conspiracy, we can uphold the verdict only if all of those firearms can be deemed to have been used in the [...] conspiracy." *Id.* After holding that three of those four firearms did not qualify as predicate firearms because they were not "carried" or "used,"[9] the Third Circuit vacated the § 924(c) conviction because the court could not "exclude the possibility that the jury convicted [defendant] solely on the basis of one or more of the weapons" that did not qualify as valid predicate firearms under § 924(c). *Id.* at 598.

The same result is required here, where the court cannot not exclude the possibility that the jury convicted Williams solely on the basis of non-qualifying predicate crimes or non-qualifying firearms.

While it is possible that the jury could have predicated the appellee's conviction only on the valid predicates in Counts 3 - 6, or that a properly instructed jury may have convicted Williams based on those Counts, the Third Circuit has made clear that courts applying *Brecht* in the context of constitutional trial errors may not "deny relief based on the probability of conviction on retrial." *Bentley*, 49 F.4th at 283. "*Brecht* instead calls on reviewing courts to determine whether an error substantially affected the *actual* jury's verdict based on the entire trial record." *Id*. The question here is not whether there was enough to support the guilty verdict absent the *Stromberg* errors. Indeed, as the Supreme Court has instructed, "[w]e are not authorized to look at the printed record, resolve conflicting evidence, and reach the conclusion that the error was harmless because we think the defendant was guilty. That would be to substitute our judgment for that of the jury and, under our system of justice, juries alone have been entrusted with that responsibility." *Weiler v. United States*, 323 U.S. 606, 611 (1945); *see Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) ("[T]o hypothesize a guilty verdict that was never in fact rendered—no matter

how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee."); *United States v. Capers*, 20 F.4th 105, 128 (2d Cir. 2021) (vacating § 924 convictions "not because [defendant] necessarily should be exonerated as a matter of law of the crime charged, but rather because an erroneous jury instruction makes it impossible to be confident that the jury convicted him on an appropriate set of findings."). It is particularly important that courts not usurp the role of juries in assessing the harmlessness of *Stromberg* errors in § 924(c) convictions because of the sentencing enhancements that accompany such convictions. *See United States v. Lewis*, 802 F.3d 449, 454 (3d Cir. 2015) (en banc) (explaining a criminal defendant has a fundamental right "to have the jury, not the judge, find such facts" that increase the mandatory minimum (discussing *Alleyne v. United States*, 570 U.S. 99 (2013)).

Following *Brecht*, upon analyzing the actual verdict rendered—without hypothesizing about what the jury could have found absent the *Stromberg* errors—there is more than a "reasonable possibility" that the *Stromberg* errors were harmful. *Brecht*, 507 U.S. at 637. As there is no way to determine from the record whether the jury relied on Count 1 or one of the offenses in Counts 2-6 as the predicate offense for Count 8, I have "grave doubt" that the errors substantially influenced the jury's decision to

convict Williams of violating § 924(c). *See O'Neal*, 513 U.S. at 436. Therefore, the errors were not harmless.

The Government incorrectly asserts that the case *United States v. Wilson*, 960 F.3d 136 (3d Cir. 2020), prevents the appellee from arguing about the uncertainty regarding which predicate supported his § 924(c) conviction. The government interprets Wilson as suggesting that "it is irrelevant that the 924(c) count involved a conspiracy charge that might not be a valid predicate [if] the 924(c) charge was mainly based on valid predicate charges for which the defendant was convicted." [ECF 451, p 3] Under this view, since Williams was convicted on charges similar to those in Wilson, there is no "reasonable possibility" that the jury "relied solely on a conspiracy and not the substantive acts" for the 924(c) firearm charge. ("[T]he record shows that if the jury relied on the invalid Hobbs Act conspiracy predicate, it also relied on the valid drug trafficking predicates. Thus, the inclusion of the Hobbs Act conspiracy as a potential predicate was harmless.")

Williams' situation is distinguishable from *Wilson*. In *Wilson*, the defendants were convicted on five counts which included *Armed Bank Robbery* and *Conspiracy to Commit Armed Bank Robbery*. The jury was instructed that Counts 1, 2, and 4 were all "crimes of violence" upon which

the § 924(c) charges in Counts 3 and 5 could be based. *Wilson*, No. 14-209, ECF No. 225 at 42. *Wilson*'s Count 1 conspiracy is no longer a "crime of violence" and cannot serve as a predicate for § 924(c), whereas armed bank robbery, charged in Counts 2 and 4, is a "crime of violence." *See Wilson*, 960 F.3d at 151. On appeal to the Third Circuit, the Wilson defendants contended that the trial court erred in instructing the jury that conspiracy to commit bank robbery constitutes a "crime of violence." The Third Circuit dismissed this objection, ruling that any mistake was harmless because the trial court record showed there was no 'reasonable possibility' that the jury relied solely on the conspiracy charge for its § 924(c) convictions, instead of also considering the bank-robbery counts.

An examination of the Wilson jury verdict forms and the charges discussed during the Wilson trial clearly indicates that the Wilson defendants' § 924(c) convictions (Counts 3 and 5) are directly associated with the valid predicate charges of armed robbery (Counts 2 and 4). See Wilson, No. 14-209, ECF No. 224 at 252 ("Count 2 is armed bank robbery regarding the November 4, 2013 robbery. Count 3 is a firearms charge connected to that armed bank robbery.")

There was significant factual overlap between the conspiracy (Count 1) and the two bank robberies (Counts 3 and 5), and the jury

found defendants guilty on all charges.  On these facts, no rational jury would have found guilt on both Counts 3 and 5 predicated solely on the Count 1 conspiracy to commit armed robbery, while simultaneously finding defendants guilty on two counts of armed robbery. Even if the jury predicated Count 3 on both Count 1 (invalid) and Count 2 (valid), Count 3 would still have been predicated on one valid and sufficient "crime of violence." Similarly for Count 5, if it was predicated on both Count 1 (invalid) and Count 4 (valid), one valid predicate remains.

Unlike Wilson, it is unclear whether the appellee's §924(c) conviction, as the government states, was "squarely grounded on valid predicate charges." We do not know if the conviction relied solely on an invalid predicate (Count 1) under the first theory, solely on an invalid predicate (Count 2) under the second theory, solely on a valid predicate (Counts 3-6) under the second theory, or a combination of valid and invalid predicates under the second theory. Had the appellee's jury *only* been presented with the second theory, the appellee's case would closely mirror *Wilson*, as defendants in both cases were found guilty of an invalid conspiracy and valid substantive offenses, either of which could have been used by the jury to form the basis for a §924(c) conviction. But *Wilson* does not address the additional complexity that Williams

poses arising from the first theory, under which a *single invalid predicate* may have served as the *only* predicate underlying the § 924(c) conviction.

The appellee concurs with the District court's reasoning and contends that his circumstances differ from those in *Wilson*. The appellee cites several out-of-Circuit cases that analyze whether to overturn § 924(c) convictions due to invalid "crimes of violence" by assessing if the valid and invalid predicates are "inextricably intertwined." [ECF 450, pp. 6–9]. According to this "inextricably intertwined" test, when a *Stromberg* error occurs from a § 924(c) conviction based on either a valid or invalid predicate, the error is deemed harmless if "the trial record clearly shows that the [valid and invalid predicates] were so inextricably linked that no rational juror could have concluded that [defendants] carried a firearm concerning one predicate but not the other." *United States v. Cannon*, 987 F.3d 924, 948 (11th Cir. 2021).

In *United States v. Vasquez*, 672 F. App'x 56 (2d Cir. 2016), the defendant was convicted of §§ 924(c) and (j) charges predicated on conspiracy to commit Hobbs Act robbery (invalid predicate) and a narcotics conspiracy (valid predicate). 672 F. App'x at 60. The Second Circuit sustained the convictions because the *sole* theory presented at trial to

support the § 924 convictions was that a co-conspirator fatally discharged a firearm "to rob drug dealers and to distribute any recovered narcotics." *Id*. at 61. The court noted that, though the defendant in *Vasquez* "hypothesizes a way in which the firearms discharge and resulting murder could have related to the robbery, but not the narcotics conspiracy, he points to nothing in the record showing that such distinct theories were ever advanced at trial." *Id*. Accordingly, because "the robbery was an act inextricably intertwined with and, indeed, in furtherance of the charged narcotics conspiracy," the § 924 convictions were "clearly supported by a [valid] narcotics predicate." *Id*.

By contrast, when an invalid predicate is not "inextricably intertwined" with a valid predicate, a § 924(c) conviction cannot stand. For instance, in *United States v. Heyward*, 3 F.4th 75 (2d Cir. 2021), the Second Circuit vacated a § 924(c) conviction on plain error review where the defendant was convicted of both a racketeering conspiracy in Count 1 (invalid predicate)—which itself involved both conspiracy to murder (invalid predicate) and conspiracy to distribute narcotics (valid predicate)—and a narcotics conspiracy (valid predicate) in Count 2.

The verdict sheet asked the jury to determine whether the defendant possessed or used a firearm during *either* of the conspiracies in Counts 1

and 2 in violation of § 924(c), and the jury found the defendant guilty. *Id*. at 85. Further complicating matters, the jury specially found that the firearm was discharged with respect to the Count 1 racketeering conspiracy, and not with respect to the Count 2 narcotics conspiracy, but the jury did not specify whether the firearm discharged with respect to the racketeering conspiracy pertained to the murder or the narcotics conspiracies within Count 1. *Id*. at 85. "Because the bulk of the firearms evidence was tied to gang violence that a jury reasonably could find was separate from any narcotics activity," the Second Circuit held that the murder and drug conspiracies within Count 1 were not "inextricably intertwined." *Id*. at 84. Accordingly, the court could not conclude that the jury had not improperly found the discharge of the firearm pertained solely to the invalid murder conspiracy, leaving the court "with a distinct uncertainty as to the propriety of his conviction," and requiring that the § 924(c) conviction be vacated. *Id*. at 85.

There is a conflict, however, between this "inextricably intertwined" test and the *Brecht*/*Kotteakos* harmless error standard. Under the "inextricably intertwined" test, if there is enough to support the ultimate result, that is the end of the inquiry and the error is harmless per se, whereas "the *Brecht*/*Kotteakos* harmless-error standard places the focus

where it should be—on the *Stromberg* error's impact on the jury." *Baugh v. United States*, 64 F.4th 779, 787 (6th Cir. 2023) (Mathis, J., dissenting). The Third Circuit has not applied this "inextricably intertwined" test in this context, and the *Brecht*/*Kotteakos* harmless error standard applied above controls. But even if the inextricably intertwined test is applied, the *Stromberg* errors in this case are not harmless. The *Stromberg* errors here could only be deemed harmless if the valid predicates in Counts 3 - 6 and the now-invalid conspiracy offenses in Counts 1 - 2 were inextricably intertwined.

But the fact that these Counts were presented to the jury based on two distinct theories for how different firearms were either used or carried for distinct crimes undercuts any claim that the predicates are inextricably intertwined. *Cf. Vasquez*, 672 F. App'x at 61 (sustaining convictions where no theory was advanced at trial to support finding firearms discharge was related only to invalid predicate, but not valid predicate). As Williams argues, Count 1 is conceptually distinct from the other charges because it is the only charge based on his own guns, while Counts 3 through 6 are conceptually distinct because they are based on an aiding-and-abetting theory and a separate incident. *See* ECF No. 450 at 9; ECF No. 335 at 69. If Count 1 were inextricably intertwined with Counts 2 - 6, the government

could not have conceded, as it did, that the two guns carried by Williams were *only* carried in relation to the conspiracy to commit Hobbs Act robbery, and *not* in relation to the other charges.

In sum, *Wilson* directs this court to analyze Williams' verdict sheet and trial record to evaluate whether there was any "reasonable possibility" that the jury based its § 924(c) convictions only on an invalid predicate. While such a possibility did not exist in *Wilson*, there is more than a "reasonable possibility" that Williams' verdict was not squarely grounded on valid predicates, and thus the *Stromberg* errors were not harmless.

For the reasons explained in this appellee brief, the Distrcit Court did not commit error when in vacated the appellee's criminal convictions. The appellee properly argued, the District Court agreed, that there was a "need to correct a clear error of law or fact or to prevent a manifest injustice," as required under Rule 59. While the appellee's convictions for attempted murder and assault under §1114 and §111 remain valid predicate crimes of violence, the general verdict rendered in this case left the District Court with "grave doubt" as to whether his §924(c) conviction was predicated on a valid "crime of violence." *See O'Neal*, 513 U.S. at 436. Further, the district Court properly concluded that there was more than a "reasonable possibility" that the *Stromberg* errors "had substantial influence" on the jury's

verdict. *Brecht*, 507 U.S. at 637; *Kotteakos*, 328 U.S. at 765. As a result, the District Court made a legally sound and fair decision to grant the appellee's §2255 and vacate his § 924(c) conviction. This Honorable Court should uphold the findings of the District Court for all the reasons stated above.

## **_CONCLUSION_**

In accordance with the above stated argument, the District Court's ruling as it pertains to appellee Melvin Williams was legal and proper. As a result, it should stand.

THE BOZZELLI LAW FIRM

1315 Walnut Street Street, Ste 1605
Philadelphia  PA 19107
PA Bar ID# 85108
Attorney for Melvin Williams

## COMBINED CERTIFICATIONS

### I. *CERTIFICATE OF BAR MEMBERSHIP*

I certify that I am a member in good standing of the bar of The Eastern District of PA and The United States Court of Appeals for the Third Circuit.

### II. *WORD COUNT*

I certify that this Brief is double spaced, 14 point face in Arial font and does not contain more than 6,500 words (including tables, certification and addendum).

### III. *IDENTICAL COMPLIANCE OF BRIEFS FILED*

I certify that the both version of this Brief (paper and electronic) are identical.

### IV. *VIRUS CHECK*

I certify that, to the best of my ability, the electronically filed Brief is free and clear of any harmful viruses with the use of Norton Anti-virus.

THE BOZZELLI LAW FIRM

1315 Walnut Street, Suite 1605
Philadelphia  PA 19107
PA Bar ID# 85108
Attorney for Melvin Williams

### *CERTIFICATE OF SERVICE*

Lawrence J. Bozzelli, Esquire being duly sworn according to law deposes and says that on the **5th Day of December, 2025** a copy of the within document was served upon the following individuals. I certify that a copy of the electronic brief will be filed on the same day as the hard copies of the brief.

U.S. Attorney's Office
615 Chestnut Street, Suite 1250
Phila , PA 19106-4476
*Via PACER*

**Clerk of Court**
United States Court of Appeals/Third Circuit
21400 United States Courthouse
601 Market Street
Phila, PA 19106
*Via PACER and HAND-DELIVERED*

THE BOZZELLI LAW FIRM

1315 Walnut Street, Suite 1605
Philadelphia PA 19107
PA Bar ID# 85108
Attorney for Melvin Williams